O’NIELL, 3,
The defendant was prosecuted under an indictment charging that he, being a man of the Caucasian, or white, r.ace, did willfully and feloniously live together and cohabit with a woman of the colored, or black, race. He was convicted, was sentenced to 12 months’ imprisonment, and prosecutes this appeal.
Before pleading to the indictment, the defendant filed a motion to quash it, and, to *901 the overruling of the motion, he reserved the first bill of exception that is urged on appeal.
The complaint or contention is that the statute on which the prosecution was founded (Act No. 206 of 1910) is meaningless, inoperative, null, and void and of no effect, because, after declaring concubinage between a person of the Caucasian, or white, race and a person of the colored or black race to be unlawful, and after prescribing the penalty therefor, the statute defines concubinage, for the purpose of the law, to be the unlawful cohabitation of persons of the Caucasian and of the colored races, whether open or secret.
Concubinage is a term of such generally known meaning that it was not necessary for the Legislature to give it a legislative definition in the law condemning concubinage between a white person and a colored person. It is not the concubinage itself that is made a crime, but concubinage between persons of the different races. The only purpose of the legislative definition was to make it plain— to leave no doubt — that concubinage between a white person and a colored person in secrecy is as unlawful as open and notorious concubinage between persons of the different races. And the reason of that, perhaps, was that, in certain provisions of the Civil Code (particularly article 1481, limiting the right of persons who have lived together in open concubinage to make donations to each .other, either inter vivos or mortis causa), concubinage is not condemned unless it be open or notorious.
The complaint or contention of the learned counsel for the defendant is, more particularly, that, having defined the concubinage denounced by the statute, “to be the unlawful cohabitation of persons of the Caucasian and colored races, whether open or secret,” it was then necessary for the Legislature to define also “cohabitation” or “unlawful cohabitation.” The answer is that the Legislature did define the unlawful cohabitation, by declaring it to be concubinage between persons of the different races, whether open or secret. “Cohabitation” is a word of such generally known meaning that it was no more necessary to give it a legislative definition than to give any other word in the statute a legislative definition.
The second bill of exceptions was reserved to the overruling of the defendant’s objections to certain testimony offered on behalf of the state. The objections were that the questions were leading, and that the evidence was immaterial and irrelevant to the issues. The witness told of a visit that he and the accused made to the residence of the alleged colored concubine of the defendant, on an occasion when the defendant requested her to sign a certain bond for him. Having only an insignificant part of the testimony before us, we are unable to determine whether it was important or unimportant, material or immaterial, to the main issue in the case. But it appears that the defendant’s visiting the alleged concubine at her residence, and requesting her to sign his bond, was somewhat relevant to -the question of the intimacy of his relations with her. The questions propounded to the witness were not at all leading. He was asked merely to say whether he had or had not been at the residence of the woman alleged to be the concubine of the defendant, on any other occasion than one about which the witness had already testified. 1-Ie said he had been at the woman’s residence on another occasion. He was asked to state the date, which he did.. He was then asked where was the defendant at the time of the visit; to which he replied that the defendant was with him. The complaint that the questions were leading or suggestive of a particular answer is not well founded.
Another bill of exceptions was reserved to a remark or comment made by the district attorney in his argument to the jury. The comment was that the defendant had not *903 proved that he lived in Mer Rouge, and had failed to call to the witness stand three residents of that town, whose names the district attorney mentioned, and who, he said, were then in the courtroom. We are not informed by the record that the defendant had testified or sought to prove, or pretended, that he lived in Mer Rouge; nor are we informed that the alleged concubine did not live there, or that evidence had not been introduced to show that the persons whose names were called by the district attorney were residents of Mer Rouge and were then present in court. The bill of exceptions recites that the attorney for the defense objected to the remarks, but it does not inform us specifically what the objection was. From the statement that, when the defendant’s attorney objected to the remarks of the district attorney, the judge instructed the jury that the state had to make out its case and the defendant was not required to prove his innocence, wo assume that the defendant’s objection was that the comment of the district attorney implied that the burden of proof was upon the defendant. It appears that the district attorney then “insisted that he was within his rights, and the court ordered him to stay within the evidence introduced on the trial.” We presume that the district attorney then obeyed the order of the court, and that the jury understood and followed the instructions of the judge.
The verdict and sentence appealed from are affirmed.